2017 OK CIV APP 14

**Rufus VANCE and Glenda Robertson, Plaintiffs/Appellees,**

v.

**ENOGEX GAS GATHERING, L.L.C., an Oklahoma Corporation, Defendant/Appellant.**

**Case No. 112,783 (Cons. w/ 113,027)**

Court of Civil Appeals of Oklahoma, Division No. 3.

FILED AUGUST 26, 2016

Mandate Issued: 03/21/2017

---

1. The need for a guardian or other order.... 30 O.S.2011, § 1-113 (emphasis added).

Kenneth R. Johnston, Wes Johnston, Jonathan Allen, Johnston & Associates, Chickasha, Oklahoma, for Plaintiffs/Appellees.

Robin F. Fields, Bryan J. Wells, Heidi M. Nichols, Conner & Winters, LLP, Oklahoma City, Oklahoma, for Defendant/Appellant.

Opinion by Wm. C. Hetherington, Jr., Judge:

¶ 1 These consolidated cases [1] are appealed first in case number 112,783 from trial by jury verdict in favor of Rufus Vance and his sister Glenda Robertson (collectively Vance) and against Enogex Gas Gathering, LLC. (Enogex) resulting from alleged oil field pipeline leakage and pollution of Vance's property. Case number 113,027 is an appeal by Vance of the resulting attorney fee action order in favor of Vance and against Enogex. Finding no abuse of discretion or misapplication of law as to the trial court's instructions to the jury or on its award of attorney fees to Vance, we **affirm** both journal entry orders.

## FACTS

### Case No. 112,783 (Pollution Case)

¶ 2 In 2010, Vance discovered what they believed to be "bubbling, gurgling, foamy liquid discharging out of a hole in the ground" on their land. Investigation revealed this to be a natural gas gathering pipeline leak from a natural gas well and line owned by Enogex. The record shows there was no denial of a leak by Enogex. Enogex alleged, however, that there was a three week inten-

tional delay between the time of the Vance discovery of the leak and when Vance reported the leak to Enogex so Vance could "prepare a lawsuit instead of working fairly and honestly with Enogex." What Enogex alleged and presented at trial was that during that three week period, Vance retained an expert and materially altered the scene of the leak and the surrounding area. Enogex then said Vance concealed that information and results of a lab test from Enogex in an effort, they contend, intended to show the jury "conditions starkly different than those seen by Enogex's pipeline operators" at trial. Enogex presented evidence the leak was a "pinhole" in size, that no fluid had escaped during the period of the leak and they saw no indication of resulting ground water or soil contamination.

¶ 3 Vance produced the pictures and videos they had taken showing the "oily, gurgling, foamy fluid coming from the hole, eyewitness testimony of the liquid in the hole, the test results from the fluid in the hole and actual samples of the fluid from the hole". They pointed out the pictures taken by Enogex showed "gurgling fluid had splashed out and melted spots in the surrounding snow" and argued Enogex intentionally buried hydrocarbons and buried and impacted soil to hide the pollution in violation of Oklahoma Corporation Commission regulatory rules thus causing pollution and damage to their entire 160 acre property.

¶ 4 Enogex countered they did not hide any hydrocarbons, repaired the pinhole leak with an approved "clamp" and did not hear any complaints from Vance until two years later when they received notice of a claim and were served with process. Enogex then had its expert investigate and introduced his testimony and report indicating again, no groundwater pollution and a "tiny amount of soil contamination."

¶ 5 Vance requested an award for diminution in value of their property of $400,000 and punitive damages. The jury returned a verdict signed by ten jurors in favor of Vance for $25,000 damage to property but awarded no damages on Vance claims for personal

---

1. Cases numbered 112,783 and 113,027 were consolidated under 112,783 for appeal consideration purposes by Supreme Court Order dated August 15, 2014.

inconvenience, annoyance and discomfort. The jury also found by checking the appropriate box, clear and convincing evidence Enogex had acted in reckless disregard of the rights of Vance. The trial court polled each juror who signed the verdict and they each agreed it was their verdict.

¶ 6 During second stage deliberations after brief testimony and instructions in the punitive damage stage, the jury sent out an unsigned note that indicated the ten jurors who signed the first verdict form checking the box that Enogex's actions were in reckless disregard of the rights of Vance, had done so in error. Following discussion with counsel, the trial court then advised the jury it had been clearly instructed on the verdict form and it could not undo its first stage verdict. The jury then returned a verdict for Vance for $25,000 in punitive damages signed by eleven jurors who were also polled by the trial judge and each confirmed this was their verdict.

¶ 7 Enogex appeals from the judgment only as to the award of punitive damages and does not challenge the compensatory damage award.[2]

### Case No. 113,027 (Attorney Fee Case)

¶ 8 Vance requested attorney fees under 12 O.S. § 940 as prevailing party. Vance argued for a "lodestar" attorney fee of $425,327.50. Their fee evidence showed 1,937.70 hours of attorney time in a heavily litigated case with extensive pre-trial issues and an eleven day jury trial. Enogex contested the fee request as to time expended, the amount requested being excessive and not supported by the "lodestar" standards, and excessive relative to the obtained result. Vance countered Enogex conducted a "scorched-earth" defense, not motivated by economic interests, but defended in a manner described by Enogex's expert as a "precedential" case. Vance argued this means not a precedential case in the legal sense, but a strategy "aimed at dissuading others from bringing similar claims against Enogex." The trial court conducted a full hearing and

awarded Vance an attorney fee award of $50,000 from which Vance appeals.

### Pollution Case Analysis

#### Standard of Review

¶ 9 This is a challenge by Enogex to the jury verdict on punitive damages and resulting award. It does so on two appeal propositions: 1. Its Motion For Judgment Notwithstanding The Verdict should have been granted as a result of the jury note indicating jury confusion and apparent intent not to find reckless disregard for the rights of Vance and, 2. Arguing the issue of punitive damages should not have been submitted to the jury. The trial court denied Enogex's Motion For Judgment On Punitive Damages Notwithstanding The Verdict and entered the final journal entry on jury verdict on October 2, 2013.

¶ 10 Enogex argued below in its motion three propositions, all three argued as a part of two propositions contained in its appellate briefs. The three motion propositions were:

(1). The Court should have returned the Verdict Form—First Stage ("First Stage Verdict") to the jury for correction as soon as those jurors sent a written note telling the Court that they had checked the punitive damages box **in error**; (2) the Court should have entered a judgment that properly reflected the intent of the 10 jurors not to award punitive damages; and (3) the Court should never have submitted the question of punitive damages to the jury in the first place based on insufficient evidence to satisfy the required standard of clear and convincing evidence. (Emphasis in original)

■■■ ¶ 11 On appeal, the standard for determining a motion for judgment notwithstanding the verdict is identical to the standard for determining a motion for directed verdict found in 12 O.S. 1997, § 698. We review a trial court's ruling on a motion for judgment notwithstanding the verdict by the same standard used by the trial court. We consider as true all evidence favorable to the

---

2. Enogex had also preserved for appeal various rulings concerning right-of-way encroachment issues. Enogex filed a Notice Of Appeal Issue Now

Rendered Moot on January 12, 2015, and an Order was entered on January 14, 2015 finding these issues moot in this appeal.

non-moving party together with all inferences that may be reasonably drawn therefrom, and we disregard all conflicting evidence favorable to the moving party. *First National Bank in Durant v. Honey Creek Entertainment Corp.*, 2002 OK 11 ¶ 8, 54 P.3d 100. (citing, *Franklin v. Toal*, 2000 OK 79 ¶ 13, 19 P.3d 834, 837). The motion should not be granted unless there is an entire absence of proof on a material issue. *Id.*

### Analysis

■ ¶ 12 First, we must consider the threshold issue of whether or not the jury should have been instructed on and allowed to consider a punitive damage award in the first instance. This is a question of law to be determined by the trial judge. *Sides v. Cordes, Inc.*, 1999 OK 36, ¶ 11 fn.10, 981 P.2d 301 (citing, *Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, ¶ 17, 867 P.2d 1241) (While the initial determination is a question of law for the court, the latter—whether to allow or deny punitive damages and their amount, if any—is left to the discretion of the trier of fact, be that judge or jury.).

■ ¶ 13 23 O.S. Supp. 2002 § 9.1 now provides in part:

A. In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, award punitive damages for the sake of example and by way of punishing the defendant based upon the following factors:

. . .

B. Category I. Where the jury finds by clear and convincing evidence that:

1. The defendant has been guilty of reckless disregard for the rights of others: or

2. An insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured; the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award punitive damages in an amount not to exceed the greater of:

. . .

The trial judge must give this instruction at the conclusion of the first stage of the trial if there is "...any competent evidence the defendant has acted with reckless disregard of the rights of others." *Sides*, at ¶ 11. The Court in *Estrada v. Port City Properties, Inc.*, 2011 OK 30, 258 P.3d 495 said: "We also noted that previous cases provide that the trial court has a duty to submit a punitive damages question to the jury unless there is a complete lack of evidence to support an inference of the conduct required by § 9." *Id.* at ¶ 18. Followed by "Nothing in the current statutory framework changes the trial court's responsibility to determine whether *any competent evidence* exists which would warrant submission of the question of punitive damages to the jury". *Id.* at ¶ 20 (citing, *Shuman v. Laverne Farmers Coop.*, 1991 OK CIV APP 2, ¶ 9, 809 P.2d 76) (emphasis in original).

■ ¶ 14 Review of the voluminous record testimony and evidence [3] shows the trial judge received and evaluated extensive, detailed conflicting expert pollution studies, videos, pictures, sampling tests and testimony evidence relevant to the presence of pollution, possible reckless conduct related to Enogex's response and acts of Vance and their experts. Considering the evidence presented at trial, heard and seen by the trial judge, we do not agree with Enogex's argument that no competent evidence exists even to permit even an inference of reckless disregard for the rights of Vance. We find sufficient competent evidence to support an inference that Enogex employees saw and knew there was pollution and deliberately tried to conceal the leak and the resulting pollution caused thereby. We find the trial court properly and as a matter of law instructed the jury on its right to consider a punitive damage award to Vance and **affirm.**

■ ¶ 15 Next, we consider the trial court's handling of the jury note indicating jury confusion. Again, this note was sent out

---

3. The evidence relevant to this issue presented by both sides is too voluminous to recite in this opinion.

to the judge while the jury was deliberating the second, punitive damage stage following second stage instructions. The record reveals the trial judge reviewed the unsigned note, advised counsel and discussion was had regarding how to handle the note with no reporter present and thus, no record of that discussion. The entire note read:

"The 10 jurors who signed the attached verdict checked the box at the bottom of the form in error. We thought we were giving a verdict of guilty or not guilty." The trial judge then brought the jury back into court and advised them:

> Counsel, and I have discussed this—this—your writing to us. And—and I am going to tell you this that, the verdict that you rendered in the first stage cannot be undone. That you have received your instructions for the second stage. And that you need to go back to the jury room continue your deliberations and come up with a verdict.

Party appeal briefs point out there was discussion the note was unsigned and whether it indicated clear intent to change the first stage verdict or, if the note was or was not one juror attempting to speak on behalf of all ten jurors who signed the verdict form, or one juror dissenting who disagreed with the initial verdict finding. The court had given OUJI 5.9 at the conclusion of the second stage which said:

> You may now, in addition to actual damages, grant the plaintiff punitive damages in such sum as you reasonably believe will punish defendant and be an example to others.

The record shows Enogex made it clear to the jury they could return a punitive damage verdict of $0 under the instructions. As noted above, the jury then returned a verdict for Vance for punitive damages in the amount of $25,000. The court then polled all twelve jurors as it did following the first stage verdict, and the eleven jurors who signed the verdict in favor of the punitive damage award

advised the judge it was each of their verdicts and they agreed with it. The jury was then instructed on discussing the case with others and discharged.

¶ 16 We agree with Vance that when the note was sent to the judge during second stage deliberations, it happened in a "separate" proceeding, after the first stage verdict had been read in open court by the clerk, jury polled and ordered recorded by the judge. The judge then excused the jury for the court and counsel to prepare for the second stage. We also agree that once the first stage verdict was received, jury polled and ordered recorded, it became a complete and final verdict regarding first stage issues.

¶ 17 While we find little law factually on point with what occurred in this case, we are guided by statutory provisions and case law discussing when a jury verdict is "complete", becomes final and is immune from later impeachment short of juror misconduct. The trial judge followed the procedures of 12 O.S. § 585 [4]. 12 O.S. § 586 tells us when a jury verdict is "complete":

> The verdict shall be written, signed by the foreman and read by the clerk to the jury, and the inquiry made whether it is their verdict. If any juror disagrees, the jury must be sent out again; but if no disagreement be expressed, and neither party requires the jury to be polled, the verdict is *complete* and the jury discharged from the case. If, however, the verdict be defective *in form only*, the same may, with the assent of the jury, before they are discharged, be corrected by the court. (Emphases added)

23 O.S. Supp. 2002 § 9.1(B) quoted above, tells us the punitive damage second stage is considered a *separate* proceeding which is *only possible* after an award of actual damages is returned along with the clear and convincing reckless disregard finding.

¶ 18 Our jurisprudence has long held that jurors will not be allowed by affidavit, deposition, or other sworn statements to

---

4.  "When the jury have agreed upon their verdict they must be conducted into court, their names called by the clerk, and their verdict rendered by their foremen. When the verdict is announced, either party may require the jury to be polled, which is done by the clerk or the court asking each juror if it is his verdict. If any one answers in the negative, the jury must again be sent out, for further deliberation."

impeach or explain their verdict, or show on what grounds it was rendered. *Lawson v. Nat. Steel Erectors, Corp.*, 2000 OK CIV APP 69, ¶ 28, 8 P.3d 171 (citing, *Willis v. Davis*, 1958 OK 290, ¶ 24, 333 P.2d 314). Juries are free to change their votes at any time until their determination is accepted by the court and recorded as a verdict. *Wiggins v. Dahlgren*, 1965 OK 131, ¶ 7, 405 P.2d 1001. A jury can change their mind in any number of ways prior to the time they render a verdict. Evidence of intent of a jury note during deliberations is not admissible to impeach a verdict, and it is error for trial court to have granted a new trial based on speculation of a party as to intent of the note. *Whitehead v. City of Tulsa*, 1980 OK 105, ¶ 13, 614 P.2d 65 (Juror note indicated a possible intent on the part of the jury to return a percentage of fault verdict different from the verdict they finally signed and returned.) (citing, *Burkett v. Moran*, 1965 OK 165, 410 P.2d 876) (Example of ambiguous and clearly defective verdict.). Further, there is clear jurisprudence a trial judge has broad discretion to inquire of jurors at the time of a verdict return in order to clarify the will and intent of the jury. *First Nat. Bank & Trust v. Exchange Nat. Bank & Trust*, 1973 OK CIV APP 7, ¶¶ 22–23, 517 P.2d 805 (quoting, *Smith v. S & F Construction Co., Inc.*, 62 Wash.2d 479, 383 P.2d 300 (1963); *Turon v. J. & L. Const. Co.*, 8 N.J. 543, 86 A. 2d 192 (1952))

¶ 19 The unsigned note does raise several possible explanations as to its motive, purpose and intent, all speculation. To bring the jury into court during the second stage deliberations and inquire of the foreperson, or other jurors, the explanation for the note could open a pandoras box, which we believe is out weighed as a public policy matter, by completeness and finality of a verdict once it has been received, jury polled and ordered recorded. Here the verdict was unambiguous and correct on its face with no defect in form. We find no abuse of discretion or error in the manner in which the trial judge dealt with the note and we **affirm.**

## Attorney Fee Case Analysis

¶ 20 In its appeal of the trial court attorney fee award, Vance argues the trial court erred by failing to set and properly determine a "lodestar" fee and seemed to rely almost totally on the single criteria of the results obtained. Vance further argues the trial court did not consider the time required to be spent by Vance counsel in prosecuting the case in light of the "scorched earth" defense. Finally, Vance challenges the reduction of the fee award as being an arbitrary determination.

¶ 21 An attorney fee award is reserved to the sound discretion of the trial court and depends upon the facts and circumstances of each individual case. Reversal occurs only where the trial court ruling is without rational basis in the evidence or where it is based upon erroneous legal conclusions. *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 1996 OK 121, 932 P.2d 1091; *Hall v. Globe Life and Accident Insurance Company*, 1998 OK CIV APP 163, ¶ 3, 968 P.2d 1260. To reverse under an abuse of discretion standard, an appellate court must find the trial court's conclusions and judgment were clearly erroneous, against reason and evidence. *Murlin v. Pearman*, 2016 OK 47, ¶ 17, 371 P.3d 1094 (citing, *Curry v. Streater*, 2009 OK 5, ¶ 8, 213 P.3d 550); *Hall v. Globe Life and Accident Insurance Company*, 1998 OK CIV APP 163, ¶ 3, 968 P.2d 1260.

¶ 22 Our review of the trial court's Final Judgment On Attorney Fees and Costs recites a careful review of case law, analysis under *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, cases of similar type and litigation history with findings that reflect "similar cases and the awards to be indicative of appropriate awards." The order demonstrates consideration of Vance's request for a "lodestar" fee plus enhancement under 12 O.S. § 940, and time spent by Vance attorneys to obtain the verdict they did in a case that involved "the zealous and diligent defense of this case by defendant's counsel."

¶ 23 After consideration of the party's briefs, we conclude the trial court's conclusions of fact and law adequately explains its decision. The trial court's order filed June 13, 2014, copy attached, is **AFFIRMED UNDER OKLA. SUP.CT.R. 1.202(b)(d).** See also *Baytide Petroleum Inc. v. Whitmar Ex-*

*ploration Company*, 2000 OK CIV APP 120, ¶ 6, 18 P.3d 378, 380.

**AFFIRMED**

JOPLIN, J., concurs; BELL, P.J., dissents.

IN THE DISTRICT COURT OF CADDO COUNTY
STATE OF OKLAHOMA

RUFUS VANCE and GLENDA ROBINSON )
　)
Plaintiffs, )
　)
vs. )　　Case No. CJ-2011-125
　)
ENOGEX GAS GATHERING LLC, an )
Oklahoma corporation, )
　)
Defendant. )

STATE OF OKLAHOMA
CADDO CO.
**FILED**
JUN 13 2014
At _____ O'Clock _____ M.
OPAL CAROL FINCH, Court Clerk
By _____ Deputy

## FINAL JUDGMENT ON ATTORNEY'S FEES AND COSTS

On May 9, 2014, the Court heard Plaintiffs' Motion for Award of Attorney's Fees and Costs filed November 1, 2013 ("Plaintiffs' Motion") and Enogex's Response to Plaintiffs' Motion for Award of Attorney's Fees and Costs filed November 26, 2013 ("Enogex's Response"). Plaintiffs appeared through counsel of record, Kenneth Johnston and Wes Johnston, and Defendant appears through counsel of record, Robin F. Fields and Heidi M. Nichols. The Court, after reviewing Plaintiffs' Motion, Enogex's Response, taking testimony and other evidence and hearing oral argument from both parties, FINDS AND CONCLUDES AS FOLLOWS:

1.　Plaintiffs' action against Defendant arises out of a pipeline leak for which Plaintiffs claimed property damages, annoyance, discomfort and inconvenience.

2.　Plaintiffs requested the jury to award $600,000.00 in actual damages ($400,000.00 in diminution and $200,000.00 in annoyance, discomfort and inconvenience). Plaintiff also requested $100,000.00 in punitive damages. Plaintiffs' total request to the jury was $700,000.00.

3. The jury awarded Plaintiffs $50,000.00, comprised of: $25,000.00 for diminution in value of Plaintiffs' property, $0.00 for annoyance, discomfort and inconvenience and $25,000.00 in punitive damages.

4. To determine proper attorney fees, the Court applies the standards set forth in *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 1979 OK 115, *Southwestern Bell Tel. Co. v. Parker Pest Control, Inc.*, 1987 OK 16, 737 P.2d 1186, and *Arkoma Gas Company v. Otis Engineering Corporation*, 1993 OK 27, 849 P.2d 392, 395.

5. *Burk* factor eight, *Southwestern Bell* and *Arkoma* establish the overarching requirement that attorneys' fees bear some reasonable relationship to the amount in controversy and the result obtained. "What is reasonable in each case must be considered in light of the extent to which the plaintiff prevailed." *Arkoma*, 1993 OK at ¶6, 849 P.2d at 395. "[N]ot in *Burk* nor anywhere else [has the Oklahoma Supreme Court] rejected the notion that an attorneys' fee must bear some reasonable relationship to the amount in controversy. *Southwestern Bell*, 1987 OK 16, 737 P.2d 1186.

6. Plaintiffs seek a "lodestar" attorney's fee of $425,327.50 (1,937.70 claimed hours) plus an enhancement pursuant to 12 O.S. § 940.

7. Under *Burk* factor eight, *Southwestern Bell* and *Arkoma*, the requested fee is not reasonable in relation to the marginal result obtained. Plaintiffs asked the jury for $700,000 but the jury awarded only $50,000. Although there is no mathematical formula to be applied in comparing the result achieved to the fee award, the following published decisions offer guidance:

| Cases | Damages Alleged | Damages Awarded | Fees Requested | Fees Awarded |
|---|---|---|---|---|
| Layman[1] | $ 350,000.00 | $ 35,000.00 | $ 86,598.75 | $ 30,000.00 |
| Williams[2] | $ 64,000.00 | $ 25,100.00 | $ 37,391.25 | $ 25,000.00 |
| Finnell[3] | $ 74,000.00 | $ 26,000.00 | $ 17,005.00 | $ 17,005.00 |
| Arkoma[4] | $ 70,000.00 | $ 100.00 | $ 24,627.23 | $ 5,500.00 |
| Hall[5] | $ 32,222.00 | $ 25,222.00 | $ 60,000.00 | $ 20,000.00 |
| Catlin[6] | $ 18,167.00 | $ 1,167.00 | | $ 600.00 |

In all but one of the referenced cases, the Court notes that the fees awarded were less than the jury's damage award. Considering these cases, and all of the remaining *Burk* factors as set forth below, this Court finds that $50,000 is a reasonable fee in light of the result achieved.

8.    Such an award is in line with the customary fees (*Burk* factor five) and awards in similar cases (*Burk* factor twelve). The customary fee of Plaintiffs' counsel in cases of this type is reflected by the fees requested and rewarded in other similar cases as shown:

| Case | Reported Hours | Jury Award | Fees Requested | Fees Awarded |
|---|---|---|---|---|
| Fowler[7] | 871.00 | $ 185,625 | $ 173,670 | $ 138,054 |
| Valley View[8] | 980.50 | $ 169,000 | $ 179,000 | $ 59,048[9] |
| Simmons[10] | 566.00 | $ 143,800 | $ 100,275 | $ 57,500 |
| Layman[11] | 644.50 | $ 35,000 | $ 86,599 | $ 30,000 |

The Court finds the cases listed above to be similar cases and the awards to be indicative of appropriate awards.

9.    Review of the remaining *Burk* factors confirms that substantial reduction of the requested fee is required and that an award of $50,000 is appropriate:

---

[1] *Layman v. Duke Energy Pipeline Co.*, CJ-98-416 (Dist. Ct. Grady Co. filed Aug. 31, 1998).

[2] *Williams & Kelley Architects v. Indep. Sch. Dist. No. 1, Okmulgee County*, 1994 OK CIV APP 113, 885 P.2d 691.

[3] *Finnell v. Jebco Seismic*, 2003 OK 35, 67 P.3d 339.

[4] *Arkoma Gas Company v. Otis Engineering Corp.*, 1993 OK 27, 849 P.2d 392.

[5] *Hall v. Globe Life and Accident Insurance Co.*, 1998 OK CIV APP 163, 968 P.2d 1260.

[6] *Catlin Aviation Company v. Equilease Corp.*, 1981 OK 13, 626 P.2d 857.

[7] *Fowler v. Exxon Mobil Corp., et al.*, CIV-01-718-C (W. D. Okla. filed Apr. 20, 2001).

[8] *Valley View v. Duke Energy Field Services LP*, CIV-04-191-D (W. D. Okla. filed Feb. 25, 2004).

[9] Includes fees associated with appeal to 10th Circuit Court of Appeals.

[10] *Simmons v. Teppco Crude Oil Pipeline L.P.*, CJ-03-251 (Dist. Ct. Caddo Co. filed Aug. 25, 2003).

[11] *Layman v. Duke Energy Pipeline Co.*, CJ-98-416 (Dist. Ct. Grady Co. filed Aug. 31, 1998).

1. *Time and labor required.* The time and labor reported is excessive for a case of this type. Plaintiffs' counsel has tried a number of similar cases in the same manner, including at least one case to this Court, and the fees requested did not approach the amount sought here. Their experience and their ability to leverage their prior work product for use in this case should result in efficiencies and lower time and labor requirements. The result should be lower, not higher, hours and fees. The hours reported also reflect substantial duplication of tasks and effort and billing for non-attorney tasks. Plaintiffs also admit that apportionment is required between fee-bearing on non fee-bearing claims. Finally, the use of block billing by Plaintiffs' counsel impairs the ability of the Court to review and consider the fee request and represents a fundamental failure by Plaintiffs' counsel to meet their burden with respect to the fee request.

2. *Novelty and difficulty of the questions.* The issues in this property damage case were not novel or difficult for Plaintiffs' counsel. Similar issues have been addressed repeatedly by Plaintiffs' counsel in other cases at lower cost.

4. *Preclusion of other employment.* Plaintiffs' counsel was not precluded from accepting other employment due to this case.

6. *Whether the fee is fixed or contingent.* Plaintiffs' counsel took this case on a contingency fee arrangement that would yield $22,500 if applied solely to the jury's damage awards.

7. *Time limitations imposed by the client or the circumstances.* No evidence was presented regarding this factor.

3, 9. *Skill requisite to perform the legal service properly; and Experience, reputation and ability of the attorneys.* The Court acknowledges the skill and experience required to prepare and present a pipeline leak case. As stated in connection with *Burk* factor one, the skill and experience of Plaintiffs' counsel should have enabled preparation and presentation of this case in far less time at a far lower cost than Plaintiffs' fee request.

10. *Undesirability of the case.* Property damage cases against pipeline companies are very desirable to Plaintiffs' counsel, who regularly handles alleged contamination actions involving pipeline leaks.

11. *Nature and length of the professional relationship with the client.* No evidence was presented regarding this factor.

10. Contrary to Plaintiffs' argument, neither settlement posture nor defendant's attorney's fees convert a marginal result into a good result. There is no evidence in the record as

to any settlement negotiations or positions, and they are irrelevant. There is similarly no evidence in the record regarding the amount of attorney's fees paid by Enogex in defense of Plaintiffs' claims. Fees of defendant's counsel in this case are irrelevant to determination of a reasonable fee. Neither settlement posture nor opposing counsel fees is relevant or listed as a factor under *Burk*. However, the Court has witnessed the zealous and diligent defense of this case by defendant's counsel. Plaintiffs' counsel had to work extremely hard to obtain their verdict.

11. Defendant introduced the expert testimony, affidavit and supporting documents and analysis of Jayne Jarnigan Robertson in response and objection to Plaintiffs' claimed fees. Ms. Robertson has 30 years of experience as counsel for plaintiffs, defendants, corporations and individuals in alleged environmental contamination actions involving claimed pipeline leaks.

12. In contrast, Plaintiffs' expert Tony Burns' testimony supported the reasonableness of the time expended by counsel for the Plaintiffs in this matter.

13. There is no dispute that Plaintiffs are entitled to costs in the amount of $8,805.68.

14. Plaintiffs are entitled to postjudgment interest from this date until paid pursuant to 12 Okla. St. Ann. § 727.1(A)(2).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:

A. Plaintiffs Rufus Vance and Glenda Robertson are hereby awarded the sum of $50,000.00 in attorney's fees of and from Defendant Enogex Gas Gathering LLC;

B. Plaintiffs Rufus Vance and Glenda Robertson are hereby awarded the sum of $8,805.68 in courts costs of and from Defendant Enogex Gas Gathering LLC.

C. The total award of $58,805.68 shall bear postjudgment interest from this date until paid pursuant to 12 Okla. St. Ann. § 727.1(A)(2).

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that no just reason for delay exists to prevent the entry of final judgment and the Clerk of the Court is hereby ordered to file and docket this Final Judgment on Attorney's Fees and Costs as a Final Order and Judgment.

**SO ORDERED** the 13th day of June, 2014.

RICHARD G. VAN DYCK
DISTRICT JUDGE