2017 OK CIV APP 58

Ulrich W. YOUNG, Plaintiff/Appellant,

v.

Bob SPENCER, Defendant/Appellee.

Case Number: 114169

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided: 06/09/2017

Mandate Issued: 11/14/2017

Jack S. Dawson, MILLER DOLLAR-HIDE, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant.

James J. Hodgens, JAMES J. HODGENS, P.C., Stroud, Oklahoma, for Defendant/Appellee.

JANE P. WISEMAN, JUDGE:

¶1 Plaintiff Ulrich W. Young appeals (1) the trial court's order finding he was not entitled to recover damages caused to his timber, and (2) a separate order awarding attorney fees and costs. After review, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Plaintiff and Defendant Bob Spencer own adjoining property in Lincoln County, Oklahoma. Plaintiff filed suit against Defendant for damage to his land and crops when Defendant "negligently, carelessly and recklessly applied herbicide applications on [Defendant's] property located to the south of Plaintiff's property." Plaintiff claims that Defendant's negligence caused "injury to his land, loss of crops, loss of value of crops, loss of income from crops, and diminution of value to his land." In his appellate brief, this is Plaintiff's summary of the facts:

[B]eginning in 2004, and continuing thereafter, [Defendant] (or an employee of [Defendant]) negligently, carelessly, recklessly, and sometimes intentionally, sprayed 2,4-D herbicide from his property onto [Plaintiff's] property. [Plaintiff] filed three (3) complaints with the Oklahoma Department of Agriculture, in 2004, 2005, and 2007. The Department of Agriculture investigated each complaint and each time determined there was 2,4-D damage on [Plaintiff's] property. The Department found that the most likely source was from the unsafe and unsuitable application of 2,4-D by [Defendant]. In all three (3) investigations by the Department of Agriculture into [Defendant's] use and application of 2,4-D, the Department concluded that [Defendant] was misusing and misapplying the 2,4-D and violating Oklahoma pesticide law.

(Citations to record omitted.) Plaintiff argues that as a result of Defendant's actions, "oversprays occurred which damaged and adversely affected [Plaintiff's] trees, crops, plants, vegetation, and timber, as well as [his] pecan and crop production."

¶3 After a bench trial held on December 8 and 9, 2014, and March 2 and 3, 2015, the trial court awarded Plaintiff actual damages totaling $22,900—first for damage to his blackberries and elderberries "as an injury to growing crops under the holdings of *Burke v. Thomas*, in the sum of $18,250.00," and second, for injury to his clover crop in the amount of $4,650.00. The trial court, finding that Defendant acted in reckless disregard for Plaintiff's rights, also awarded Plaintiff punitive damages of $22,900. The trial court in its order did not award Plaintiff damages for injury to timber pursuant to 23 O.S. § 72 and *Short v. Jones*, 1980 OK 87, 613 P.2d 452, because he failed to present evidence of "the fair market value of his land before and after the injury." The trial court also determined Plaintiff could not be awarded damages for pecan production because he "failed to prove with a reasonable degree of certainty the amount of damages that he sustained to his pecan trees as a separate claim of injury to crops." The trial court also did not award damages "for replacement[ ] costs for trees, crops and shrubbery as that does not appear to be the appropriate measure of damages."

¶4 Plaintiff then filed a motion for attorney fees and costs in the amount of $124,382.98 as the prevailing party. After a hearing, the trial court awarded Plaintiff attorney fees of $45,000 and costs of $11,165.73.

¶5 Plaintiff appeals both orders.

## STANDARD OF REVIEW

¶6 Plaintiff argues the trial court erred when it failed to award damages for timber pursuant to 23 O.S.2011 § 72. This presents a

question of statutory construction which is a question of law. *Mariani v. State, ex rel. Oklahoma State Univ.*, 2015 OK 13, ¶ 7, 348 P.3d 194. Our standard of review is *de novo* on a question of law which we review without deference to the trial court's reasoning or result. *Id.*

¶ 7 Plaintiff further argues the trial court incorrectly determined his attorney fees and costs. "The reasonableness of attorney fees depends on the facts and circumstances of each individual case and is a question for the trier of fact." *Parsons v. Volkswagen of America, Inc.*, 2014 OK 111, ¶ 9, 341 P.3d 662. "The standard of review for considering the trial court's award of an attorney fee is abuse of discretion." *Id.* "Reversal for an abuse of discretion occurs where the lower court ruling is without rational basis in the evidence or where it is based upon erroneous legal conclusions." *Id.* However, "[w]hether a party is entitled to an award of attorney fees and costs presents a question of law subject to the *de novo* standard of review." *Hastings v. Kelley*, 2008 OK CIV APP 36, ¶ 8, 181 P.3d 750.

## ANALYSIS

### I. Timber Damages

¶ 8 Plaintiff first asserts error in failing to award damages for timber pursuant to 23 O.S.2011 § 72 which provides:

A. For wrongful injuries to timber upon the land of another, or removal thereof, the measure of damages is not less than three (3) times nor more than ten (10) times such a sum as would compensate for the actual detriment, unless:

1. The trespass was casual and involuntary;

2. Committed under the belief that the timber or land belonged to the trespasser; or

3. The timber was taken by the authority of highway officers for the purposes of a highway, in which case the damages are a sum equal to the actual detriment.

B. The prevailing party shall be entitled to costs and attorney's fees.

C. For purposes of this section, the term "timber" shall be defined as the term is defined by Section 1301-102 of Title 2 of the Oklahoma Statutes.

Pursuant to 2 O.S.2011 § 16-2(9),[1] "timber" is defined as "live and dead trees and the profit in any live and dead trees including, but not limited to, bark, foliage, wood, vines, firewood, crossties, and shrubbery."

¶ 9 In *Short v. Jones*, 1980 OK 87, 613 P.2d 452, the Oklahoma Supreme Court in interpreting this statute concluded that damages to the plaintiff's pecan trees were to be considered damages to property rather than damages to crops. In *Short*, a crop duster was performing an aerial spraying of an herbicide for Jones which drifted onto the plaintiff's property causing "a toxic effect upon certain pecan-bearing trees located" on the plaintiff's property. *Id.* ¶ 2. The plaintiff claimed "40 acres of his land had been so damaged reducing the value of the land by $300 per acre to a value after injury of $150 per acre." *Id.* In the petition, the plaintiff argued "his pecan trees were damaged in such a manner that the trees' ability to produce pecans was permanently damaged." *Id.* ¶ 6. The Court found:

Annual crops referred to in 2 O.S. 1971 § 3-82(d) when applied to the production of pecans would refer to damage to one yearly crop without harm to the trees producing that crop. Harm to the trees constitutes damage to the real property itself. ... The Federal Supreme Court has spoken on the issue, stating standing timber is a constituent element of the land itself. ... Annual crops represent a separate, if not distinct, classification of plant material.

*Id.* (citations omitted). The Oklahoma Supreme Court further explained: "To hold the provisions of 2 O.S. § 3-82(d) applies to instances where trees are permanently injured would be to ignore the historically well established dichotomy between timber and annual crops; between real property and personal property. This we refuse to do." *Id.* ¶ 8. The Court concluded that 2 O.S. § 3-82(d) did not apply to damages to real property which has "timber growing thereon." *Id.* However, the

1. Section 1301-102 of Title 2 was renumbered as 2 O.S. § 16-2 in 2001.

Supreme Court found a separate basis existed to recover for damage to realty pursuant to 23 O.S. § 72. *Id.* ¶ 9.

¶ 10 In determining how to calculate damages pursuant to 23 O.S. § 72, the Court found the challenged jury instruction based on this statute to be free of error. *Id.* ¶ 12. It concluded:

> The damages are to be determined by reference to the value of the land before and after injury and once actual damages are ascertained, then the inquiry becomes whether the jury finds the treble damage provision applies, and if so, whether the jury in its discretion chooses to apply the multiplying factor.

*Id.* ¶ 12. The *Short* Court cited its previous holding in *Denver Producing & Refining Company v. Bunch*, 1935 OK 525, 45 P.2d 117, for this proposition. *Id.* It summarized *Denver* this way:

> [*Denver*] involved an action to recover for damage to an orchard. Therein this Court reversed a jury verdict and judgment where the only evidence of damage was referable to the value of the trees apart from the soil. There the Court noted the defendant requested an instruction stating the measure of damage should be the difference between the property immediately before and after the injury. Additionally, the Court noted in passing the expert testimony of valuation of the trees was admissible for jury consideration along with the difference in value before and after damage, but in absence of the latter, reversed the judgment.

*Short*, 1980 OK 87, ¶ 12, 613 P.2d 452; *see also Pace v. Ott*, 1941 OK 245, 115 P.2d 253 (syl. no. 3 by the Court)("In an action for the destruction and injury of growing trees and grass brought by the owners of the land on which the same are located in which no evidence is offered as to the value of the premises before or after the injury, a demurrer to such evidence should be sustained, or failing to do so, verdict should be directed in favor of the defendants on timely motion therefor.").

¶ 11 In arguing error in failing to award damages for injury to timber, Plaintiff points out that unlike the plaintiff in *Short*, he is "not claiming damage to his land" but rather damage to timber. He contends that with the statute's amendment in 1995, the trial court should not have relied on *Short v. Jones*, because the version of the statute in that case did not include the definition of "timber" at the time.

¶ 12 Although Plaintiff agrees that where there is permanent damage to land, the measure of damages is the value of the land before and after the injury, he argues there is an "exception" to the rule. Quoting *Armstrong v. May*, 1916 OK 110, 155 P. 238, Plaintiff relies on the following:

> The true measure of damages for injuries to real estate is the difference in the market value of the real estate just before and just after the injuries complained of; but this rule, however, is subject to the exception that if that destroyed, although it is a part of the realty, has a value without reference to the soil on which it stands, or out of which it grows, a recovery may be of the value of the thing destroyed, and not for the difference in the value of the land before and after such destruction.

*Id.* ¶ 5. Plaintiff concludes that "[s]imply put, damages may be recovered for the loss of standing timber, or crop bearing trees or growing crops, annual or otherwise, without attempting to recover for loss of value to the land itself."

¶ 13 We conclude the *Armstrong* case is distinguishable from this case. In *Armstrong*, "damages were asked for a destruction of crops, some standing and some gathered, by reason of defendant ... allowing his cattle to go into plaintiff's field." *Darby Petroleum Corp. v. Mason*, 1936 OK 181, ¶ 2, 54 P.2d 1046. "The only question involved was the value of the crop [*i.e.*, corn], which the court said had a separate and distinct value which was ascertainable." *Id.* This is consistent with the holding above in *Short v. Jones*.

¶ 14 As stated in *Short*, "Annual crops represent a separate, if not distinct, classification of plant material" while "standing timber is a constituent element of the land itself." *Short*, 1980 OK 87, ¶ 6, 613 P.2d 452. To recover "wrongful injuries to timber upon the land of another," the measure of damages

is governed by 23 O.S.2011 § 72. And in construing this statute, the *Short* Court concluded that "damages are to be determined by reference to the value of the land before and after injury," and once actual damages are determined, the "measure of damages is not less than three (3) times nor more than ten (10) times such a sum as would compensate for the actual detriment." *See Short*, 1980 OK 87, ¶ 12, and 23, 613 P.2d 452 O.S. 2011 § 72.

¶ 15 Using this analysis, we conclude that the trial court properly found Plaintiff, to recover for wrongful injuries to timber pursuant to 23 O.S.2011 § 72, had the burden to establish his "actual detriment" by establishing "the difference in fair market value of the land before and after the injury." Any evidence regarding the value of the trees may contribute to this determination. However, adding the definition of "timber" in 1995 to this statute did not change the manner in which actual damages should be determined. Without evidence establishing the proper method and amount of actual damages, Plaintiff simply cannot recover under this provision.[2] The trial court's decision on this point is affirmed.

## II. Attorney Fees

¶ 16 Plaintiff sought the recovery of attorney fees pursuant to 12 O.S. § 940 and on appeal, asserts trial court error in its calculation of attorney fees by (1) reducing the hourly rates of Mr. Dawson and Ms. Alden to $175 per hour, (2) failing to award and include paralegal and legal assistant time in the lodestar amount, (3) failing to enhance the lodestar fee "through consideration of the factors outlined in [*Burk*]," and (4) failing to award former counsel attorney fees.

¶ 17 "Generally, the correct formula for calculating a reasonable fee is to: 1) determine the compensation based on an hourly rate; and 2) enhance the fee through consideration of the factors outlined in *Burk v. Oklahoma City*, 1979 OK 115, 598 P.2d 659 (*Burk* factors)." *Spencer v. Oklahoma Gas & Elec. Co.*, 2007 OK 76, ¶ 13, 171 P.3d 890. "In

all cases, the attorney fees must bear some reasonable relationship to the amount in controversy." *Id.* The Oklahoma Supreme Court in *Spencer* restates the *Burk* factors:

The factors set out in *Burk v. Oklahoma City* are: time and labor required; novelty and difficulty of the questions; skill requisite to perform the legal service; preclusion of other employment; customary fee; whether the fee is fixed or contingent; time limitations; amount involved and results obtained; experience, reputation and ability of the attorneys involved; risk of recovery; nature and length of relationship with the client; and awards in similar causes. An attorney seeking an award must submit detailed time records and offer evidence of the reasonable value of the services performed based on the standards of the legal community in which the attorney practices. Thereafter, steps are taken to determine a reasonable fee. First, **from the detailed time records**, a lodestar fee is arrived at by multiplying the attorney's hourly rate by the hours expended. Second, the fee may be enhanced by application of the *Burk* factors. Finally, any fee so calculated is subject to the rule that it must be reasonable and bear some reasonable relationship to the amount in controversy.

*Id.* ¶ 14 (footnotes omitted).

### Hourly Rates

¶ 18 Plaintiff requested a "lodestar amount of $74,866.50" in reasonable attorney fees to be awarded in this case. Plaintiff claims a total of 409.30 billable hours at hourly rates of $300 for Mr. Dawson, $200 for Ms. Alden, and $150 for Ms. Rust, Mr. Lane and Mr. Low. Plaintiff's expert, however, testified that the local rates for experienced attorneys are "more in the nature of 175 to 200 dollars an hour." The court concluded:

The Court finds that the hourly rates charged by Attorneys Jack S. Dawson and Amy L. Alden to be in excess of those commonly charged by attorneys for litigation in Lincoln County, which is $175 per

---

**2.** Because Plaintiff only appeals the trial court's order denying recovery of damages pursuant to 23 O.S.2011 § 72, we will not address the trial

court's remaining findings and conclusions in the July 2, 2015, order.

hour. Attorney Dawson charged $300 per hour, and Attorney Alden charged $200 per hour. Those attorneys' hourly rates are reduced to $175 per hour.

The trial court's decision to reduce the hourly rates for these two attorneys is not an abuse of discretion; however, based on their comparative experience and skill level, it was an abuse of discretion to reduce them equally within the range offered by the expert.[3] The hourly rate for Mr. Dawson is therefore modified to $200 an hour. We see no abuse of discretion in the remainder of the decision as to hourly rates.

## Paralegal/Legal Assistant Fees

██ ¶ 19 Plaintiff also argues the trial court erred in failing to award and include paralegal and legal assistant time in the lodestar amount. The total amount of attorney fees includes paralegal and legal assistant time at hourly rates between $40 and $95 per hour. The trial court determined "that in the Lincoln County area, time expended by paralegals and legal assistants is not generally allowed, and therefore, the fees requested for the legal assistants and paralegals will not be allowed." We disagree.

¶ 20 Oklahoma law allows the recovery of paralegal/legal assistant fees in certain circumstances. In *Taylor v. Chubb Group of Insurance Companies*, 1994 OK 47, ¶ 5, 874 P.2d 806, the Supreme Court determined that paralegal/legal assistants' charges may be included in "attorney fees" as used in the statute.[4] It also recognized this determination could be applied to an award of attorney fees in other actions including those under 12 O.S. §§ 936-40. *Id.* at n. 2. The Supreme Court concluded:

> Our holding today, that the time of paralegals is properly includable as a component to be considered in the trial court's assess-

ment of the total value of services rendered, is limited to charges for work performed, which otherwise would have had to have been performed by a licensed attorney at a higher rate.

*Id.* ¶ 13. Charges "for time spent in copying documents and in doing other secretarial tasks, rather than substantive legal work" are not recoverable as paralegal/legal assistant fees. *Id.; see also Oklahoma Natural Gas Co. v. Apache Corp.*, 355 F.Supp.2d 1246, 1256 (N.D. Okla. 2004)("Oklahoma law recognizes that in appropriate circumstances paralegal fees may be recovered under a fee-shifting statute such as § 936.").

¶ 21 Because Oklahoma law clearly establishes paralegal/legal assistants' time for substantive legal work is a recoverable element of attorney fees, we reverse the trial court's decision on this issue and remand this element to the trial court to "determine if the paralegal time is for work that would otherwise have had to be performed by an attorney, if the hours so recorded are reasonable and necessary and whether the rate of paralegal compensation conforms to the prevailing community standard." *Oklahoma Natural Gas Co.*, 355 F.Supp.2d at 1256.

## Former Counsel Fees

██ ¶ 22 Plaintiff also argues the trial court erred in failing to allow "evidence relating to time expended by [his] former counsel, now deceased." During the hearing on the motion for attorney fees and costs, Plaintiff's current counsel testified that after Plaintiff's former counsel died, he entered an appearance in the case. Plaintiff's current counsel further testified that he told Plaintiff he would honor the contingency fee contract he had with his former counsel and "settle up with [former counsel's] estate on whatever

---

3. At the attorney fee hearing, Defendant's counsel suggested to Plaintiff's expert, "So would it be fair, then, given the rate and the locale, if we reduced Mr. Dawson's rate to $200 an hour?" With the expert's view that the rates of $150 an hour for associates and $200 an hour for partners were appropriate, he responded that a reasonable approach would be to use a blended rate of $200 an hour for the attorneys in the case. September 23, 2015 Transcript, p. 49, lines 17-19.

4. As the Court reasoned in *Taylor*, "Separately charging for the time of legal assistants has grown in larger communities in response to clients' desire to keep the average hourly rate as low as possible, consistent with competent handling of cases." *Taylor v. Chubb Grp. of Ins. Cos.*, 1994 OK 47, ¶ 10, 874 P.2d 806.

part they had coming." However, Plaintiff's counsel testified that although he received former counsel's litigation file, he was unable "to find any of his time records and very few of his financial records ... but [he knew] that [Plaintiff] gave [former counsel] $5,000 for litigation costs." Plaintiff's counsel did attempt to reconstruct former counsel's time records by comparing them to Defense counsel's time records provided on a previous motion to tax fees and costs. Plaintiff's counsel also tried to reconstruct the time records through his expert witness. Defendant objected to this line of questioning stating it is "just speculative in nature." The trial court agreed:

> Well, but here's the problem. The question is an experienced attorney, an attorney who does his or her job appropriately, which Mr. Pordos [Plaintiff's expert] is going to answer to, because everyone in this room knows each other's backgrounds and knows their reputations. And you're asking me to replace that for what Mr. Brady [former counsel] would have done. I don't know Mr. Brady. I don't know anything about him. And, you know, for the minimum time that an experienced, reasonable attorney would do in this—in this instance isn't—I mean, can't be considered what this other attorney in fact did. He may have handed it off to someone else to review. He may not have even reviewed it. So I think we're really getting off track here.

¶ 23 The trial court did not allow further questioning of Plaintiff's expert regarding this issue. On appeal, Plaintiff argues that an attorney fee may be based on reconstructed records.

¶ 24 Although attorney fees may be based on reconstructed records, we agree with the trial court that the time records for Plaintiff's former counsel could not adequately be reconstructed. In *Spencer*, the attorney attempting to reconstruct time records had a computer crash and lost much of his time records. *Spencer v. Oklahoma Gas & Elec. Co.*, 2007 OK 76, n. 13, 171 P.3d 890. The attorney testified he recreated his billing after going back through the pleadings, using his memory, and using a "docketing program

that [they] have in terms of Court appearances." *Id.*

¶ 25 In *Burk*, the "attorneys for appellees did not keep time records of their work as the litigation progressed, but rather they had to reconstruct the number of hours spent" and concluded their total number of hours was "based upon review of their files and court files." *State ex rel. Burk v. Oklahoma City*, 1979 OK 115, ¶ 12, 598 P.2d 659. Nothing "prevents an attorney fee award based on a reconstruction of the time spent on a case based upon other records which verify the activity in the case, such as the court file or the attorney's copies of letters, pleadings, or file memoranda." *Usrey v. Wilson*, 2003 OK CIV APP 25, ¶ 6, 66 P.3d 1000. "According to the teachings of *State ex rel. Burk v. City of Oklahoma City*, lawyers are obligated to provide the trial court with the data necessary to document the work performed together with the method used to arrive at a counsel-fee allowance." *Payne v. Dewitt*, 1999 OK 93, ¶ 18, 995 P.2d 1088. "The submission of these records fulfills one of the reasons set forth in *Burk*: to give the trial court and the reviewing appellate court an adequate record to determine the reasonableness of the attorney fees." *Act South, LLC v. Reco Elec. Co.*, 2013 OK CIV APP 23, ¶ 22, 299 P.3d 505. Based on the facts and evidence presented, we find no error and affirm the decision on this issue.

### Enhancement

¶ 26 Plaintiff also contends the trial court erred in failing to enhance the lodestar fee "through consideration of the factors outlined in [*Burk*]." We restate that "[g]enerally, the correct formula for calculating a reasonable fee is to: 1) determine the compensation based on an hourly rate; and 2) *enhance* the fee through consideration of the factors outlined in *Burk v. Oklahoma City*, 1979 OK 115, 598 P.2d 659 (*Burk* factors)." *Spencer*, 2007 OK 76, ¶ 13, 171 P.3d 890 (emphasis added). The Supreme Court has repeatedly held that trial courts are to calculate attorney fees by first, setting the lodestar fee amount by multiplying the appropriate hourly rate by the hours expended, and second, by adding an amount applying the *Burk* fac-

tors. As it directed in *Spencer,* "any fee so calculated is subject to the rule that it must be reasonable and bear some reasonable relationship to the amount in controversy." *Id.* ¶ 14.

¶ 27 Plaintiff maintains that his expert testified specifically about the "*Burk* factors and concluded that, in his opinion, the lodestar amount sought by [Plaintiff] should be enhanced by 20%." On this issue, the trial court found:

> Although there was testimony that the attorney fee should be enhanced by reason of some of the *Burk* factors, the Court disagrees with any enhancement. Although the Plaintiff's attorneys took the matter on a contingency basis, which does involve risk, the factor regarding the amount involved and the results obtained is the most applicable and warrants close analysis. In the Court's opinion, considering all of the *Burk* factors, there must be some adjustment of the lodestar fee based upon this factor, and the attorney fee awarded must bear some relation to the results obtained.

As to its consideration of the *Burk* factor "regarding the amount involved and the results obtained," the trial court determined:

> The amount sought by the Plaintiff in the pre-trial conference order was $171,280.60 in actual damages. Using the minimum multiplier of three (3), the Plaintiff sought $528,361.80 in actual damages, although the Plaintiff could have been awarded ten times the actual damages for an amount of $1,712,806.00. The Plaintiff also sought punitive damages.

> The Plaintiff was granted judgment for actual damages in the amount of $22,900.00 and punitive damages in the same amount, for a total judgment of $48,500.00.[5]

> The amount in controversy and the amount recovered are dramatically different. This factor must be taken into account in the awarding of attorney fees.

> . . . .

.Not only is there [ ] a significant difference in the amount sought and the results obtained, the Plaintiff, at trial, withdrew [his] claim for damages for timber removal and replacement costs, which were specifically listed in the pre-trial conference order. Furthermore, there is no apparent reason why this matter should have taken so long to make it to trial.

As a result, the Court has determined that the adjusted lodestar fee of $57,287.50, as discussed earlier in this Order, should be further adjusted to $45,000.00, whereby the fee will bear a reasonable relation to the results obtained in this case.

¶ 28 Rather than enhancing the lodestar fee, the trial court, clearly concerned that the lodestar fee amount exceeded the damages award, reduced the fee to $45,000 to bring it into alignment with the $45,800 awarded. There is no strict rule that the award of attorney fees may not exceed the amount of recovery. There are certainly cases in which the attorney fees exceeded the recovery. *See Spencer,* 2007 OK 76, 171 P.3d 890 (1.3 times the recovery) and *Southwestern Bell Tel. Co. v. Parker Pest Control, Inc.,* 1987 OK 16, 737 P.2d 1186 (2 times the recovery). The factor in question is whether the fee bears a reasonable relationship to the results obtained.

¶ 29 Because we take issue with the trial court's exclusion of paralegal/legal assistant time and its failure to set Mr. Dawson's hourly rate properly and therefore reverse the attorney fee order to correct these errors, we are unable to affirm the trial court's ultimate conclusion setting the amount of attorney fees to be awarded.[6] We remand for further proceedings by the trial court and caution against overemphasizing one *Burk* factor to the exclusion or under emphasis of others.

### III. Costs

██ ¶ 30 Plaintiff contends the trial court erred "by failing to find that expert fees are 'incidental costs' for purposes of Okla. Stat.

---

5. We recognize this figure is a typographical error.

6. We recognize the holding in the recent case *Vance v. Enogex Gas Gathering, LLC,* 2017 OK CIV APP 14, 393 P.3d 718, from a different division of this Court on a similar issue of attorney fees under 12 O.S.2011 § 940, but find the case distinguishable from ours.

tit. 12, Section 940 and by failing to award costs for expert fees." Section 940(A) provides:

> In any civil action to recover damages for the negligent or willful injury to property and any other *incidental costs* related to such action, the prevailing party shall be allowed reasonable attorney's fees, court costs and interest to be set by the court and to be taxed and collected as other costs of the action.

12 O.S.2011 § 940(A)(emphasis added).

[14, 15] ¶ 31 "In considering the specific items of cost disallowed, we are constrained by the rule that cost awards must be based upon statutory enactments." *Atchley v. Hewes*, 1998 OK CIV APP 143, ¶ 3, 965 P.2d 1012. "[E]xpert witness fees 'are only recoverable when specifically made so by statute.'" *Dyer v. Emergency Care, Inc.*, 2004 OK CIV APP 51, ¶ 6, 91 P.3d 683 (quoting *Andress v. Bowlby*, 1989 OK 78, ¶ 12, 773 P.2d 1265). It could be argued that the term "incidental costs" in § 940 refers to such items as elements recoverable incident to the damage to property, and therefore to be proved as an element of recovery in Plaintiff's case-in-chief, rather than as legal expenses incidentally incurred in pursuing the § 940 action to be recovered post-trial. Despite this, although § 940 makes reference to "incidental costs," we decline to expand this term to include expert witness fees without some basis for doing so. The trial court properly denied Plaintiff's recovery of expert witness fees under this provision.

### CONCLUSION

¶ 32 We conclude that in an action to recover wrongful injuries to timber pursuant to 23 O.S.2011 § 72, the trial court properly found Plaintiff had the burden to establish his actual damages by showing "the difference in fair market value of the land before and after the injury." Without this evidence, Plaintiff cannot recover under this provision, and we affirm the trial court on this issue.

¶ 33 As to attorney fees, we find (1) no abuse of discretion in the trial court's reduc-

tion of Ms. Alden's hourly rate, but reducing Mr. Dawson's hourly rate was error and should have been set at $200 an hour; (2) the trial court's refusal to include paralegal/legal assistants' time is also error requiring reversal; and (3) its refusal to award former counsel attorney fees is affirmed. In light of our reversal and modification of Mr. Dawson's hourly rate and reversal of the compensability of paralegal/legal assistant time, the amount of attorney fees to be awarded is remanded to the trial court for overall recalculation consistent with this Opinion. The requested award of Plaintiff's expert witness fees pursuant to 12 O.S.2011 § 940(A) was correctly denied, and that decision is affirmed.

¶ 34 As a last matter, the Oklahoma Supreme Court dismissed Defendant's counter-petition in error as untimely filed, and so we decline to address any of Defendant's arguments on appeal that the trial court erred in granting damages to Plaintiff.

¶ 35 **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, P.J., concurs, and THORNBRUGH, V.C.J., concurs specially.

THORNBRUGH, V.C.J., concurring specially:

¶ 1 I concur specially with the majority opinion.

¶ 2 I concur with the majority's decision that the district court erred in denying paralegal fees and in reducing the hourly rate of attorney Dawson. I further concur with the decision that the lower court's final cap of $45,000 on the remaining fees of $57,287 was not supported by the court's *Burk* analysis.

¶ 3 I concur specially to emphasize that the district court misinterpreted *Burk* factor number eight, and reduced fees simply because the amount recovered was considerably less than the amount sought.[7] This logical *non sequitur* implies that, had Plaintiff sought *less in damages*, his reasonable fee for obtaining the *same recovery* might have

---

7. Order of Nov. 3, 2015 (stating, "the amount in controversy and the amount recovered are dramatically different—this factor must be taken into account in awarding of attorney fees.").

been *higher*. I find no rational or legal basis for such a principle.

¶4 It is my opinion that the *Burk* factor regarding the "amount in controversy" has relevance in two situations: The first is when a *defendant* seeks fees. It is clearly proper to examine a defendant's potential liability when deciding how much a defendant should reasonably expend in defending against that liability. The second is when the plaintiff's recovery is clearly limited by the pleadings, but the plaintiff expends an unreasonable amount compared with the *maximum possible recovery*. I find no accepted legal principle that the fees expended by a plaintiff who recovers $48,500 are inherently *less reasonable* if the plaintiff sought $1,000,000 than they are if the plaintiff sought $100,000. In this case, the reasonableness of the fees pursuant to *Burk* factor eight are determined by balancing the *result against the fee*, not the *amount sought against the result*.

¶5 Because each error we have found is immediately quantifiable, I believe this Court or the trial court should calculate the applicable fee and restore the fee to $57,287, adding the denied paralegal hours and adding an extra $25 per hour for each of Dawson's hours.