FOLSOM v. CENTURY LIFE ASSURANCE CO.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:FOLSOM v. CENTURY LIFE ASSURANCE CO.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 FOLSOM v. CENTURY LIFE ASSURANCE CO.
2021 OK CIV APP 50
Case Number: 118920
Decided: 11/05/2021
Mandate Issued: 12/08/2021
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2021 OK CIV APP 50, __ P.3d __

 
VICKIE L. FOLSOM, individually, and as surviving spouse of ROGER G. FOLSOM, Deceased, Plaintiff/Appellee,
v.
CENTURY LIFE ASSURANCE COMPANY, Defendant/Appellant.
APPEAL FROM THE DISTRICT COURT OF
MUSKOGEE COUNTY, OKLAHOMA
HONORABLE JEFFREY J. PAYTON, TRIAL JUDGE
AFFIRMED AS MODIFIED
Johnny R. Blassingame, THE RUDNICKI FIRM, Oklahoma City, Oklahoma and
Joe M. Hampton, HAMPTON BARGHOLS PIERCE, PLLC, Oklahoma City, Oklahoma, for Defendant/Appellant,
Mellissa S. Hedrick, HEDRICK LAW FIRM, Oklahoma City, Oklahoma, and
Joe E. White, Jr., Charles C. Weddle, III, Kate C. Thompson, WHITE & WEDDLE, PC, Oklahoma City, Oklahoma, for Plaintiff/Appellee.
THOMAS E. PRINCE, JUDGE:
¶1 Century Life Assurance Company ("Appellant") appeals the trial court's June 22, 2020 Order, which awarded Vickie L. Folsom ("Appellee") an attorney fee award in the sum of $885,630.00 in a bad-faith insurance case that ended after Appellee accepted Appellant's $125,000.00 offer to confess judgment. The trial court entered its judgment after an evidentiary hearing on Appellee's application for attorney fees and costs and a review of Appellant's response and other documents and exhibits. The trial court found that the lodestar attorney fee to which Appellee was entitled was $221,407.50. The trial court also found that Appellee was entitled to a $664,222.50, or 300%, fee enhancement--resulting in a total attorney fee award of $885,630.00. Based on the record and applicable law, we: modify the trial court's lodestar calculation; affirm the trial court's finding that an enhancement was warranted; and modify the enhancement and reduce the total attorney fee award to $230,263.80.
BACKGROUND
¶2 The record in this case begins in June 2017, when Appellee filed this action after Appellant's bad-faith refusal to honor an $11,000.00 accidental death insurance policy obtained by Roger G. Folsom, deceased. In the Petition, Appellee prayed for judgment in her favor against Appellant for: breach of contract damages in excess of $75,000.00; actual damages in excess of $75,000.00; and punitive damages in excess of $75,000.00. Undergirding Appellee's Petition and the litigation described more fully below were Appellee's allegations that, on January 1, 2015, Roger Folsom, deceased, and his wife, Appellee, were shopping at a Dillard's department store at a Tulsa mall when Mr. Folsom tripped and fell on a transition piece between the edge of the concrete flooring and the tiled aisle walkway. As a result of the fall, Mr. Folsom fractured his right humeral head and dislocated fingers on his left hand. Mr. Folsom was rushed to St. Francis Hospital, where he underwent surgery and was hospitalized until January 5, 2015. On January 7, 2015, Mr. Folsom returned to St. Francis allegedly due to septic shock and acute renal failure. He began dialysis on January 8, 2015, and remained on dialysis until his death on November 13, 2015.
¶3 Effective April 1, 2013, Appellee's decedent, Mr. Folsom, had a contract for accidental death and dismemberment insurance with Appellant in the amount of $11,000.00 for injuries or losses sustained in a common accident. Mr. Folsom's contract with Appellant was in full force and effect at the time of his death in November 2015. Because Mr. Folsom allegedly died as a result of his January 1, 2015 accidental fall, Appellee made a claim on the accidental death and dismemberment policy, which Appellant denied in a letter dated June 22, 2016. The June 22, 2016 letter stated, among other things, that "[Appellant] must respectfully advise you [Appellee] that since death by natural causes is not a covered loss under the policy, we will not be making payment on this claim." As a result of Appellant's allegedly improper conduct, Appellee filed this lawsuit.
¶4 The record here shows that this case was both highly contested and brought to resolution by the parties in a timely and prompt manner. On December 27, 2017, an Agreed Scheduling Order was entered. Following an initial round of discovery, eight months into the litigation (on February 26, 2018), Appellant made an offer to confess judgment in the amount of $33,000.00, "exclusive of any costs and attorney fees incurred by Plaintiff to the date of [the o]ffer." See Appellant's [First] Offer of Judgment. Despite Appellant's offer to confess judgment, Appellee continued to litigate, allowing the $33,000.00 offer to expire by operation of law. See 12 O.S. § 1101.1(B) ("If a plaintiff fails to file a timely response [to an offer of judgment,] the offer of judgment shall be deemed rejected.").
¶5 After the expiration of Appellant's first offer to confess, Appellee's counsel took depositions; retained a bad-faith insurance expert; and engaged in extensive motion practice, which was to be expected in a bad-faith insurance case in which the insured's cause of death was disputed. On May 21, 2018, during the course of discovery, Appellee dismissed her breach of contract claim without prejudice, leaving only the bad-faith insurance claim. On December 18, 2018, Appellant filed a Motion for Summary Judgment ("MSJ"), to which Appellee responded on January 9, 2019. A disposition docket occurred on January 2, 2019, setting the matter for pretrial conference on February 6, 2019. Both sides subsequently filed multiple Motions in Limine, to which both sides filed timely responses. The trial court heard argument on Appellant's MSJ on February 6, 2019. The record does not reveal that a ruling was made thereon prior to the announced settlement of the case. On February 8, 2019, just two days after the trial court heard argument on Appellant's MSJ (and just seventeen (17) days before the start of trial), Appellant filed a second offer to confess judgment in the amount of $125,000.00, again "exclusive of any costs and attorney fees incurred by Plaintiff to the date of [the o]ffer." See Appellant's [Second] Offer of Judgment; see also 12 O.S. § 1101.1(B) ("The fact an offer of judgment is made but not accepted or is deemed rejected does not preclude subsequent timely offers of judgment."). Appellee accepted.
¶6 By accepting Appellant's offer, Appellee became the prevailing party, entitling her--by statute--to make application to recover reasonable attorney fees and costs. See 36 O.S. § 3629(B) (attorney fees); 12 O.S. § 928 (costs). Appellant does not dispute this. See June 22, 2020 Order at 2 ("Century Life Assurance Company does not dispute that Vickie Folsom is the prevailing party in this action and is entitled to recover attorney fees and costs . . . ."). In March 2019, Appellee filed her fee application. Numerous documents and exhibits, including Appellant's response and objection to the fee application, were subsequently filed of record. Appellee's fee application included the affidavit of attorney Kent R. McGuire. In his Affidavit, Mr. McGuire stated, among other things, that Appellee's "attorneys possessed the requisite skills and experience to perform the work efficiently and properly as evidenced by outcome obtained." Aff. Kent R. McGuire at 2. Mr. McGuire also stated that, pursuant to State ex rel. Burk v. City of Oklahoma City, 1979 OK 115, 598 P.2d 659, "it [was] his opinion that the Court should enhance the [lodestar] amount" by utilizing "a multiplier of four (4) [because it] would fully, fairly, and equitably compensate counsel for their fees." Aff. Kent R. McGuire at 2. In June 2019, the trial court held an evidentiary hearing on Appellee's fee application, at which both parties appeared by their attorneys. Mr. McGuire did not appear at the hearing. However, Appellee presented the in-person testimony of Charles C. Weddle, III, who sponsored Appellee's exhibits documenting the time spent, rates charged, and services rendered by Mr. Weddle and his colleagues. Appellant, by contrast, presented the in-person testimony of Christopher Woods, a licensed Oklahoma attorney who offices in Tulsa. Mr. Woods presented testimony supporting the reasons he set forth in his affidavit as to why the lodestar attorney fee should be reduced rather than enhanced. At the conclusion of the hearing, the trial court reserved ruling on the attorney fee motion until the parties submitted proposed findings of fact and conclusions of law.
¶7 The trial court thereafter reviewed the proposed findings, conclusions, and orders, as well as Appellee's application for attorney fees, the Appellant's response, and other documents and exhibits. In its June 22, 2020 Order, the trial court made a detailed finding that the appropriate lodestar attorney fee to which Appellee was entitled was $221,407.50.[1] Upon consideration of the factors set forth in Burk, 1979 OK 115, the trial court also found that Appellee was entitled to an astonishing $664,222.50, or 300%, fee enhancement--resulting in a total attorney fee award of $885,630.00.[2] See June 22, 2020 Order at 3 (explaining that, upon "consideration of the criteria announced in Burk, 1979 OK 115, and Oliver's Sports Center, Inc. v. National Standard Insurance Co., 1980 OK 120, 615 P.2d 291, that the lodestar attorney fee calculation should be enhanced.") (cleaned up). Although the trial court's Order suggests that the trial court considered the in-person and written testimony of Mr. Woods, Appellant's fee expert, the trial court ultimately concluded that there should be no reduction in the lodestar attorney fee, and adopted the lodestar calculation set forth in Appellee's application.
¶8 This appeal timely followed.
STANDARD OF REVIEW
¶9 A trial court's award of attorney fees is reviewed for abuse of discretion. Parsons v. Volkswagen Group of America, Inc., 2014 OK 111, ¶ 9, 341 P.3d 662, 666; Burk, 1979 OK 115, ¶ 22 ("When a question on appeal presents the issue of reasonableness of attorney's fees awarded by the court, abuse of discretion by the trial judge is the standard of review."). "To reverse a trial court on the ground of abuse of discretion it must be found that the trial judge made a clearly erroneous conclusion and judgment, against reason and evidence." Abel v. Tisdale, 1980 OK 161, ¶ 20, 619 P.2d 608, 612. Reversal is only justified under the abuse of discretion standard of review "where the lower court ruling is without rational basis in the evidence or where it is based upon erroneous legal conclusions." Parsons, 2014 OK 111, ¶ 9.
ANALYSIS
¶10 While Appellant presents a dozen propositions of error on appeal, there are three questions we must address to dispose of this matter: first, whether the trial court abused its discretion in the calculation of the lodestar attorney fee; second, whether the trial court's determination that a fee enhancement was appropriate manifested an abused discretion; and third, whether the trial court abused its discretion by awarding a 300% fee enhancement. Based on the record and applicable law, we: modify the trial court's lodestar calculation; affirm the trial court's finding that a fee enhancement was warranted; and modify the fee enhancement and reduce the total award.
The Lodestar Attorney Fee 
¶11 In this case, the trial court found that the lodestar attorney fee to which Appellee was entitled was $221,407.50.[3] Appellant contends the trial court's lodestar attorney fee was unreasonable. We agree and find that the trial court's lodestar attorney fee award was against reason and evidence and should have been reduced based on the record and applicable law.
¶12 Although the trial court's lodestar attorney fee calculation was purportedly based on a thorough review of Appellee's application for attorney fees (which included time records), the Appellant's response, and other documents and exhibits, as well as the hearing on Appellee's application, see June 22, 2020 Order at 1--2, this Court holds that the in-person testimony of Appellant's fee expert, Mr. Woods,[4] demonstrated that the trial court's lodestar attorney fee calculation was clearly erroneous. Appellee's counsel clearly put a tremendous amount of time and effort into this case. Even so, Appellee's fee application was in part based upon block billing, vague entries, and billing for duplicative time.[5] Consistent with the applicable law, this Court's jurisprudence, and the evidence in the record, a 20% reduction in the trial court's lodestar attorney fee--i.e., a reduction from $221,407.50 to $177,126.00--is warranted to account for the issues regarding Appellee's counsel's time-keeping methods. Silver Creek Investments, Inc. v. Whitten Construction Management, Inc., 2013 OK CIV APP 49, ¶ 17, 307 P.3d 360, 366--67 (holding that a 15% across-the-board reduction of an attorney fee award was warranted to account for block billing and vague entries, or "those issues regarding the time-keeping methods used by [Appellee's] counsel"). Not unlike this Court in Silver Creek, federal courts--sitting in Oklahoma and elsewhere--also have routinely reduced attorney fee awards by a fixed percentage to account for block billing and vague entries. E.g., Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998) (holding that where block billing makes it difficult or impossible for the court to determine the amount of time spent on specific tasks, a general reduction in fees is permissible, but not required); Catholic Benefits Association LCA v. Azar, CIV-14-240-R, 2018 WL 3876615, at *10 (W.D. Okla. Aug. 15, 2018) (imposing a 20% reduction on "the most egregiously block billed time entries"); McCrary v. Country Mutual Insurance Co., 13-CV-507-JED-PJC, 2016 WL 8118183, at *3 (N.D. Okla. June 22, 2016) (holding that "an overall 15% reduction in fees is warranted because block billing and vague time entries render meaningful review of the time spent on specific tasks impossible") (cleaned up); Oklahoma Natural Gas Co. v. Apache Corp., 355 F. SupP.2d 1246, 1265 (N.D. Okla. Dec. 9, 2004) ("adopt[ing] the tack taken by courts that have used a general reduction to compensate for hours not properly recorded" and imposing a 15% reduction due to "block billing, inter-office conferences, excessive attorney time and duplication of effort reflected in the time records"); Poynor v. Community Unit School District #300, 99-C-1290, 1999 WL 1101566, at *1 (N.D. Ill. Nov. 30, 1999) (imposing a 10% reduction on block billed entries). Similarly, state and federal courts also have found that billing for duplicative time is unreasonable. E.g., In re Adoption of Baby Boy A, 2010 OK 39, ¶ 46, 236 P.3d 116, 129 (directing the district court on remand to reject "any stacking of hours for two or three attorneys to perform the same legal service"); D&M Carriers, Inc. v. Reed, CIV-07-877-R, 2008 WL 11338374, at *1 (W.D. Okla. Nov. 18, 2008) ("[T]he Court finds that the hours expended to have more than one attorney present at depositions, personal conferences[,] and court proceedings, including trial, were not reasonable and necessary for the prosecution of this case."); Oklahoma Natural Gas Co., 355 F. SupP.2d at 1259 ("[I]f multiple representation results in inefficiency or duplication of effort, the court may reduce an attorney fee request accordingly."). Evan though this Court holds that a reduction in the lodestar attorney fee was justified in this case, we also hold that issues with an attorney's time-keeping methods--including block billing--do not alone justify a reduction in the lodestar attorney fee in every case. In other words, as shown by the authorities cited above, whether to reduce the lodestar attorney fee because of an attorney's time-keeping methods is discretionary.
¶13 This Court adopts the tack taken by Oklahoma's state and federal courts and finds that the lodestar attorney fee should be reduced to account for the issues raised by the documents, exhibits, and testimony presented by Appellant and its expert witness. Based on the record in this case, Appellee's lodestar attorney fee calculation included $23,448.38 for block billing and vague entries, and another $19,765.00 for duplicative time entries. All told, block billing, vague entries, and billing for duplicative time accounts for $43,213.38 (or 19.5%) of the trial court's lodestar attorney fee computation. See Aff. Christopher Woods at 15; cf. June 25, 2019 Tr. at 36--37 & 62--63. Accordingly, we hold that the trial court's lodestar attorney fee computation was against reason and evidence and should, therefore, be reduced from $221,407.50 to $177,126.00 (i.e., a 20% reduction).
The Fee Enhancement
¶14 Appellant also alleges that the trial court's 300% fee "enhancement was impermissible under Oklahoma law and wholly unreasonable." See Appellant's Br.-in-chief at 18. Pursuant to the factors set forth in Burk, 1979 OK 115 (which were explicitly considered by the trial court, see June 22, 2020 Order at 3--6), this Court holds the trial court's determination that a fee enhancement was appropriate should be affirmed. However, this Court also holds that the amount thereof--300%--was against reason and evidence and must, therefore, be decreased by a factor of ten (10) (i.e., from 300% to 30%). Accordingly, we affirm the trial court's fee enhancement as modified.
¶15 In the Order before us on appeal, the trial court concluded, "upon consideration of the criteria announced in Burk, 1979 OK 115, and Oliver's Sports Center, Inc., 1980 OK 120, that the lodestar attorney fee calculation should be enhanced." See June 22, 2020 Order at 3 (cleaned up). We agree and hold that the evidence in the record justifies an enhancement of the lodestar attorney fee owing, first and foremost, to the amount involved and the extraordinary results achieved by Appellee, not to mention the skill demonstrated by Appellee's counsel, the risks involved, and the complexity of the case. Burk, 1979 OK 115, ¶ 8; Pursley v. Mack Energy Co., 1995 OK CIV APP 129, ¶ 8, 908 P.2d 289, 291; Thompson v. Andover Oil Co., 1984 OK CIV APP 51, ¶¶ 26--30 , 691 P.2d 77, 84.
¶16 Oklahoma has "a strong presumption that the lodestar method, alone, will reflect a reasonable attorney fee." Parsons, 2014 OK 111, ¶ 39. But cases like this one warrant an enhancement. First and foremost, we find, as the trial court did, that the amount of money at issue and the results obtained were noteworthy. In this case, Appellee's counsel's secured an offer to confess judgment in an amount ten (10) times greater than the amount purportedly owed by Appellant to Appellee (on the face of the insurance policy), and almost four (4) times greater than Appellant's first offer to confess. This is truly extraordinary. See June 22, 2020 Order at 4; see also Burk, 1979 OK 115, ¶ 8. The securing of such an extraordinary result is a legitimate basis on which to enhance a lodestar attorney fee, as is the skill demonstrated by counsel. Burk, 1979 OK 115, ¶ 8. As the trial court observed:
[t]he proper presentation of [Appellant's] case required a high degree of skill on the part of her attorneys. From the Court's own observations of the work of the attorneys for [Appellant], both on paper and orally. . . the Court finds that the [Appellant's] attorneys exhibited a high level of skill[, which] was necessary given the complexity of the issues and the evidence, [and] the vigorous defense provided by the attorneys for [Appellee] . . . .
See June 22, 2020 Order at 4. A fee enhancement also is appropriate to account for the risks inherent in litigation handled on a contingency basis. Burk, 1979 OK 115, ¶ 8. In such cases, successful outcomes are never guaranteed--despite even the most competent attorneys' efforts. See Morgan v. Galilean Health Enterprises, Inc., 1998 OK 130, ¶ 14 (holding that "[t]he contingent-fee character of [] representation is [] one factor to be considered in setting the fee award"); Oliver's Sports Center, Inc., 1980 OK 120, ¶ 6 (holding that, in addition to the computation of attorney fees based on time, "[t]he litigation risk factor must be considered"); see also Joyce v. Federated National Insurance Co., 228 So.3d 1122, 1126--27 (Fla. 2017) ("[A] trial court must first determine the lodestar amount . . . [but] may then adjust the lodestar amount based upon a 'contingency risk' factor and the 'results obtained'.) (quoting Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1151 (Fla. 1985)) (cleaned up). Lastly, a fee enhancement is appropriate owing to the complexity of the case. Burk, 1979 OK 115, ¶ 8; cf. Aff. Kent R. McGuire at 2 ("The work performed by [Appellee's counsel] was customary and usual for this type of suit. This was a complex matter involving a unique area of the law, i.e., bad faith denial of an accidental death policy claim.") (emphasis added). While Appellant's arguments concerning the alleged complexity--or lack thereof--of this case are cogent, Appellant fails to acknowledge that this case became more than a routine dispute over "whether a death was the result of an accident as defined in an accidental death insurance policy." Appellant's Br.-in-chief at 25. Though this case began as a simple bad-faith insurance action, "it quickly became much more complicated," not unlike the matter before the Oklahoma Supreme Court in Spencer v. OG&E, 2007 OK 76, ¶ 26, 171 P.3d, 890, 898, which began as a simple declaratory judgment action. Rather than honor the $11,000.00 accidental death insurance policy obtained by Mr. Folsom, deceased, Appellant denied Appellee's claim and provided, as the trial court observed, a "vigorous defense." See June 22, 2020 Order at 4. Moreover, after the expiration of Appellant's first offer to confess, Appellee presented an aggressive defense. As the facts in the record make clear, Appellee's counsel took depositions; retained a bad-faith insurance expert; and engaged in extensive motion practice. In other words, Appellee prepared the case as if the matter were going to trial, where she would have borne the burden of proof to establish that her deceased husband's death was a covered loss under the terms of the accidental death insurance policy. See Ball v. Wilshire Insurance Co., 2009 OK 38, ¶ 21, 221 P.3d 717, 724 (holding that the first element of a bad-faith claim against an insurer is that the "claimant was entitled to coverage under the insurance policy at issue"). Whether Appellee's husband died of natural causes or as the result of an accident was hotly contested. For example, according to Jason Dansby, MD, the attending physician who completed Mr. Folsom's discharge summary, the direct cause of Mr. Folsom's death was sepsis. See May 11, 2018 Dep. Jason Dansby, MD at 24, lns. 23--25. By contrast, Timothy Robison, MD (Mr. Folsom's longtime personal physician), testified that the "acute renal failure" that caused Mr. Folsom's death was itself triggered by his January 1, 2015 accidental fall, during which Mr. Folsom fractured his right humeral head and dislocated fingers on his left arm. See March 23, 2016 Dep. Timothy Robison, MD at 83, lns. 9--17. Because Mr. Folsom's cause of death was the subject of sharp disagreement, and contradictory testimony, it was sure to be the main issue at trial, where the outcome of the case would have been anything but certain.
¶17 As we explained above, the trial court's determination that a fee enhancement was justified was not itself against reason and evidence. Appellee prepared for trial and eventually secured a substantial settlement in the face of highly contested facts. Even so, we find and hold that the amount of the enhancement--300%--was so great as to constitute an abuse of discretion. We therefore modify the trial court's judgment. See Burk 1979, OK 115, ¶ 19; see also Spencer, 2007 OK 76, ¶ 27 (increasing the trial court's lodestar calculation by approximately 10%); Thompson, 1984 OK CIV APP 51, ¶ 30 (awarding a $5,800.00 incentive bonus to hourly compensation that totaled just $4,200.00).
¶18 As we explained above, this case warranted an enhancement both because the results achieved were extraordinary and because the amount at issue was significant, to say nothing of the skill demonstrated by Appellee's counsel, the risks involved, and the complexity of the case. Regardless, attorney fees "must bear some reasonable relationship to the amount in controversy . . . and that relationship must be considered in each case where an attorneys' fee is awarded." Southwestern Bell Telephone Co. v. Parker Pest Control, Inc., 1987 OK 16, ¶ 17, 737 P.2d 1186, 1189; Young v. Spencer, 2017 OK CIV APP 58, ¶ 26, 405 P.3d 701, 709 (citation omitted). This means that despite the parties' disagreements about the value of this case, compare Appellant's Br.-in-chief at 28--29 ("The evidence before the court proved that the $11,000.00 accidental death benefit was not actually the amount of money at issue. The [Appellee] sought damages in excess of $225,000.00 . . . [and] served a $7.5 million settlement demand on [Appellant] along with the Petition. . . . The confessed judgment here was almost half what [Appellee] sought in her Petition and a small fraction of her settlement demand. 'Based on this, the results obtained were modest.'") (citation omitted) with Appellee's Ans. Br. at 22 ("The evidence is this case demonstrates this case was not highly desirable. . . . [A]ccording to [Appellant], the results obtained in this case were insubstantial given [Appellee's] pre-suit demand for settlement."), and whether the results achieved really were extraordinary, the trial court was obligated to consider "whether the fee bears a reasonable relationship to the results obtained." Young, 2017 OK CIV APP 58, ¶ 26. Here, the trial court awarded a total attorney fee that was more than seven (7) times the amount of the recovery. While "[t]here is no strict rule that the award of attorney fees may not exceed the amount of recovery," the attorney fee award must "bear[] a reasonable relationship to the results obtained." Id.
¶19 We hold that the record and applicable law constrains us to award Appellee only a 30% incentive, or bonus fee (i.e., a 1.3 multiplier), above the modified lodestar. See Strack, Trustee of Patricia Ann Strack Revocable Trust Dated 2/15/99 v. Continental Resources, 2021 OK 21, __ P.3d __ (filed April 20, 2021) (holding that "[e]ven in those instances that warrant an enhancement to a lodestar calculation, [the Oklahoma Supreme] Court has been modest" and "rarely permit[s] a multiplier above 1.5"); but see Briscoe v. Harper Oil Co., 1985 OK 43, ¶ 14, 702 P.2d 33, 37 (awarding "a 50% bonus calculated upon the hourly rate"). Thirty percent of the modified lodestar attorney fee of $177,126.00 equals $53,137.80. Added to the modified lodestar attorney fee of $177,126.00 makes for a total attorney fee award of $230,263.80.[6] Unlike a total attorney fee award of $885,630.00, a total attorney fee award of $230,263.80 bears a reasonable relationship to the amount in controversy and the results obtained (i.e., the securing by Appellee's counsel of a $125,000.00 offer to confess seventeen (17) days before trial). Accordingly, the trial court's attorney fee award is affirmed as modified.
CONCLUSION
¶20 Based on the record and applicable law, this Court holds that the trial court's lodestar attorney fee award was against reason and evidence and should have been reduced by 20% to account for Appellee's fee application's reliance on block billing, vague entries, and billing for duplicative time. This Court also holds that although the trial court rightly enhanced the lodestar attorney fee, a 300% enhancement was unreasonable. On this record, a 30% fee enhancement, rather than a 300% enhancement, was reasonable. Thus, Appellee's total attorney fee award is $230,263.80.
¶21 AFFIRMED AS MODIFIED.
FOOTNOTES
[1] The lodestar attorney fee is calculated by multiplying the hours reasonably worked by a reasonable hourly rate. Atwood v. Atwood, 2001 OK CIV APP 48, ¶ 70 n.21, 25 P.3d 936, 951 ("The lodestar fee is the base fee computed as the reasonable number of hours times the reasonable hourly rate.").
[2] The trial court's total attorney fee award of $885,630.00 is even higher than Appellee's proposed order, which set forth a total attorney fee award of $797,067.00. See [Appellee's] Proposed Order & [Appellee's] Proposed Findings of Fact and Conclusions of Law, R. at 791--92 & 799--800.
[3] See June 22, 2020 Order at 3 ("The total Lodestar Attorney Fee . . . equals $221,407.50.); cf. Atwood, 2001 OK CIV APP 48, ¶ 70 n.21 ("The lodestar fee is the base fee computed as the reasonable number of hours times the reasonable hourly rate.").
[4] See June 25, 2019 Tr. at 24 through 102.
[5] See, e.g., June 25, 2019 Tr. at 36, ln. 24 through 37, ln. 6 ("Q (By [Appellant's counsel]) And with respect to the various entries of block billing, did it cause you to render an opinion with respect to [Appellee's] time records? A [By Mr. Woods] Yes. Well, my opinion was that because of the blocked billing that the [Appellee's] time records failed to provide the requisite level of detail to permit the Court to determine whether the time was reasonable, the amount of time was reasonable."); id. at 62, ln. 23 through 63, ln. 9 ("Q [By Appellant's counsel) And so with respect to your opinion, what was the issue of having 128 inter-office conferences being sought to be billed here? A [By Mr. Woods] The concern with inter-office conferences is that if you bill for multiple lawyers, it's doing the same task. Billing multiple lawyers [for] the same work is essentially double billing. And so when it relates to inter-office conferences, you know, standard billing practices, it's not uncommon at all that inter-office conferences are not billed. The clients won't pay for it. But at a minimum, the standard billing practice, you know, per billing judgment is that you don't bill duplicative time."); see also See [Appellee's] Proposed Order & [Appellee's] Proposed Findings of Fact and Conclusions of Law, R. at 791--92 & 799--800 (admitting that a 10% reduction in the hours spent on this case is appropriate to account for Appellee's counsel's use of block billing).
[6] This amount reflects the adding of a 30% incentive, or bonus fee, to the modified lodestar attorney fee of $177,126.00. Put differently, the total attorney fee award is the lodestar amount, as modified, enhanced by a 1.3 multiplier ($177,126.00 x 1.3 = $230,263.80).




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2001 OK CIV APP 48, 25 P.3d 936, 72 OBJ 1530, ATWOOD v. ATWOOD
Discussed at Length
 1995 OK CIV APP 129, 908 P.2d 289, 66 OBJ 3784, Pursley v. Mack Energy Co.
Discussed
 2013 OK CIV APP 49, 307 P.3d 360, SILVER CREEK INVESTMENTS, INC. v. WHITTEN CONSTRUCTION MANAGEMENT, INC.
Discussed
 2017 OK CIV APP 58, 405 P.3d 701, YOUNG v. SPENCER
Discussed at Length
 1984 OK CIV APP 51, 691 P.2d 77, Thompson v. Andover Oil Co.
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 16, 737 P.2d 1186, 58 OBJ 456, Southwestern Bell Telephone Co. v. Parker Pest Control, Inc.
Discussed
 2007 OK 76, 171 P.3d 890, SPENCER v. OKLAHOMA GAS & ELECTRIC COMPANY
Discussed
 2009 OK 38, 221 P.3d 717, BALL v. WILSHIRE INSURANCE CO.
Discussed
 2010 OK 39, 236 P.3d 116, IN THE MATTER OF THE ADOPTION OF BABY BOY A
Discussed
 2014 OK 111, 341 P.3d 662, HESS v. VOLKSWAGEN OF AMERICA, INC.
Discussed at Length
 1979 OK 115, 598 P.2d 659, STATE EX REL. BURK v. CITY OF OKLAHOMA CITY
Discussed at Length
 1980 OK 120, 615 P.2d 291, Oliver's Sports Center, Inc. v. National Standard Ins. Co.
Discussed at Length
 1980 OK 161, 619 P.2d 608, Abel v. Tisdale
Discussed
 2021 OK 21, STRACK v. CONTINENTAL RESOURCES
Cited
 1998 OK 130, 977 P.2d 357, 70 OBJ 59, Morgan v. Galilean Health Enterprises, Inc.
Cited
 1985 OK 43, 702 P.2d 33, Briscoe v. Harper Oil Co.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 928, Costs Allowed to Plaintiff upon Judgment in His Favor in Actions for Recovery of Money or Property
Cited
 12 O.S. 1101.1, Actions for Personal Injury, Wrongful Death and Certain Specified Actions - Other Actions - Evidence - Applicability - Severability
Discussed
Title 36. Insurance
 Cite
Name
Level

 36 O.S. 3629, Furnishing of Proof of Loss Forms - Submitting Written Offer of Settlement or Rejection of Claim to Insured
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA